1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9    Elvira Fernandez, individually and as Co-)    CV 11-02001-PHX-FJM
     Personal Representative of the Estate of)
10   Daniel Frank Rodriguez; Frank Rodriquez,)     **ORDER**
     individually   and   as   Co-Personal)
11   Representative of the Estate of Daniel)
     Frank Rodriguez,                        )
12                                           )
                  Plaintiffs,                )
13                                           )
     vs.                                     )
14                                           )
                                             )
15   City of Phoenix; Richard Allen Chrisman,)
                                             )
16                Defendants.                )
                                             )
17   _____)

18

19          The court has before it defendant City of Phoenix's ("the City") motion to dismiss

20   plaintiffs' 42 U.S.C. § 1983 claims (doc. 31), plaintiffs' response (doc. 40), and the City's

21   reply (doc. 51).  Also before us is the City's motion for judgment on the pleadings on the

     state law claims (doc. 32), plaintiffs' response (doc. 42), and the City's reply (doc. 52).
22
                                             **I**
23
            When considering motions to dismiss and motions for judgment on the pleadings we
24
     accept allegations as true.  See Oklevueha Native Am. Church of Haw., Inc. v. Holder, 676
25
     F.3d 829, 834 (9th Cir. 2012) (motion to dismiss); Dunlap v. Credit Prot. Ass'n, L.P., 419
26
     F.3d 1011, 1012 n.1 (9th Cir. 2005) (motion for judgment on the pleadings).
27
            Plaintiff Elvira Fernandez called 911 on October 5, 2010 concerning a dispute she was
28

1   having with her son, Daniel Frank Rodriguez.  Defendant Richard Chrisman (then a Phoenix

2   police officer) and Officer Sergio Virgillo arrived at the trailer Daniel shared with Fernandez.

3   Fernandez told the officers that Daniel had not hurt her and that he had no weapons.  She

4   asked the officers to help resolve the argument by asking Daniel to leave.

5           The officers knocked on the door, but no one answered.  They entered the trailer.

6   Daniel demanded that the officers leave.  In response, Chrisman placed the muzzle of his gun

7   against Daniel's temple and refused to leave.  Chrisman then re-holstered his gun, grabbed

8   Daniel, and sprayed pepper spray into Daniel's eyes.  Next, Chrisman used his Taser on

9   Daniel's chest.  Daniel fell down, stood up, and was tased again by Chrisman.

10          Daniel walked towards his bicycle, which was in the living room, stating that he was

11  going to ride his bike to his father's house.  Chrisman grabbed him.  At this point, Daniel's

12  dog began barking.  Chrisman shot the dog twice, killing it instantly.  Daniel was upset and

13  repeatedly asked Chrisman why had he killed his dog.  He again attempted to leave the

14  trailer.  Chrisman aimed his gun at Daniel.  Daniel took a step back and put his hands up.

15  He had nothing in his hands.  Chrisman shot Daniel twice in the chest, killing him.

16          In 2005, Chrisman planted drug paraphernalia on a mentally ill woman during a field

17  training exercise.  He was suspended without pay and his name was placed on the "Brady

18  List," which names police officers who have acted in ways that question their integrity or

19  honesty.  Chrisman was also investigated for his off-duty role in a security scam at a low-

20  income housing project.

21          Fernandez originally filed this action in the Superior Court of Arizona in Maricopa

22  County.  Defendants removed.  We granted the parties' joint motion to allow plaintiff to file

23  a first amended complaint joining claims by Frank Rodriquez, Daniel's father (doc. 26).

24  Plaintiffs filed their amended complaint on March 8, 2012 (doc. 27).  The amended

25  complaint asserts three claims against the City: count four (unconstitutional policies and

26  customs and failure to properly train and supervise its officers under § 1983); count five

27  (negligence); and count six (gross negligence).

28          The City moved to dismiss count four under Rule 12(b)(6), Fed. R. Civ. P. and

1    answered the amended complaint on the same day.  The next day, the City moved for

2    judgment on the pleadings on counts five and six.

3                                                    II

4          A city cannot be sued under 42 U.S.C. § 1983 under a theory of *respondeat superior*.

5    AE ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012) (citing Monell

6    v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978)).  To be liable, the

7    city must have "had a deliberate policy, custom, or practice that was the moving force behind

8    the constitutional violation." Id. (citation omitted).  Post-Iqbal, bare allegations concerning

9    "some unidentified government policy or custom" are no longer sufficient.  Id. at 637.

10   Enough facts must be alleged to plausibly suggest that plaintiffs are entitled to relief on their

11   Monell claim.  Id.

12         In count four, plaintiffs allege that

13         the City was deliberately and callously indifferent to the constitutional rights
           of those that they serve in training (and/or failing to adequately train) its police
14         personnel in (among other things) the appropriate, lawful and constitutional
           policies, procedures, practices, protocols, and customs for the use of force in
15         recurring circumstances police face.

16   Compl. ¶ 62.  Plaintiffs have not alleged any facts concerning the City's particular policies,

17   practices, or customs surrounding excessive force.  Their non-specific allegation is not

18   sufficient to survive a motion to dismiss.  See AE ex rel. Hernandez, 666 F.3d at 637

19   (conclusory allegation that defendant county had policies, customs, or practices relating to

20   the custody and care of dependent minors failed to state a claim).

21         Plaintiffs argue that their allegation regarding the City's failure to train its officers in

22   the use of force states a claim.  A city may be liable under § 1983 for failure to train if

23   plaintiffs can show that the city's failure to train amounted to deliberate indifference to the

24   rights of those with whom the city's employees interact.  Connick v. Thompson, __ U.S. __,

25   131 S. Ct. 1350, 1359 (2011).  Only then does a failure to train become an actionable policy

26   or custom.  Id. at __, 131 S. Ct. at 1359-60.  Demonstrating deliberate indifference requires

27   a showing that the city's training "is deficient in a particular respect," because without such

28   notice a city "can hardly be said to have deliberately chosen a training program that will

1    cause violations of constitutional rights." Id. at __, 131 S. Ct. at 1360.  Here, plaintiffs fail

2    to allege any facts identifying what is inadequate about the City's training on the use of force.

3    Plaintiffs simply allege that the City was deliberately indifferent in its training or lack of

4    training, a conclusory allegation that fails to satisfy Iqbal.[1]

5          Next, plaintiffs argue they have adequately pled a failure to supervise and retain

6    claim.[2]  They allege that "the City was deliberately and callously indifferent to the

7    constitutional rights of those that they serve in the screening, hiring, retention and/or

8    supervision of police personnel, employees, and agents." Compl. ¶ 63.  Plaintiffs allege that

9    the City's supervision and retention of Chrisman was improper because it knew about

10   Chrisman's planting of drug paraphernalia on a woman, his off-duty involvement in a

11   housing scam, and his placement on the Brady List, and thus knew of Chrisman's propensity

12   to violate people's constitutional rights.  Plaintiffs' allegations certainly suggest that Chrisman

13   was a police officer with questionable character.  However, even viewing the complaint in

14   the light most favorable to plaintiffs, Chrisman's alleged misdeeds do not plausibly show that

15   he was prone to pepper spray, tase, and shoot an unarmed man without provocation.  See Bd.

16   of Cnty. Comm'rs v. Brown, 520 U.S. 397, 411, 117 S. Ct. 1382, 1392 (1997) ("A plaintiff

17   must demonstrate that a municipal decision reflects deliberate indifference to the risk that a

18   violation of a particular constitutional or statutory right will follow the decision.").

19         Finally, plaintiffs allege that the City is liable under § 1983 for its deprivation of their

20

21   _____

         [1] Plaintiffs argue that one of the factual bases of their failure to train claim involves
22   Officer Virgillo and states a plausible claim.  Plaintiffs did not include these facts in their
     complaint.  Instead, they ask us to take judicial notice of Officer Virgillo's statement that the
23   City did not train officers to act when another officer pulls his gun on someone.  This
     statement was made during an interview which was conducted as part of the City's internal
24   investigation.  Although we may take judicial notice of public records, we may not take
     notice of facts that can be "subject to reasonable dispute." United States v. Corinthian Colls.,
25   655 F.3d 984, 999 (9th Cir. 2011) (citation omitted).  Officer Virgillo's perception of the
     adequacy and scope of the City's training is subject to reasonable dispute, and is therefore
26   not appropriate for judicial notice under Rule 201(b), Fed. R. Evid.
27

28       [2] Plaintiffs concede that they are not pursuing a § 1983 hiring claim.

1    Fourteenth Amendment right to a continued familial relationship with Daniel.  A state's

2    unwarranted interference with the liberty interest of parents in the companionship of their

3    child is actionable under § 1983.  <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 685 (9th Cir.

4    2001).  Although plaintiffs allege that the City's failure to train and properly supervise or

5    retain its officers violated plaintiffs' Fourteenth Amendment rights, as discussed above, they

6    do not allege any facts identifying the specific policies or inadequate training of the City that

7    led to this violation.  Without any facts, plaintiffs have failed to state a claim.

8         Moreover, although plaintiffs allege that the City's actions "substantially contributed

9    to and/or was the moving force behind Daniel's treatment and the use of excessive force upon

10   him," <u>Compl.</u> ¶ 68, they do not allege any facts showing how the City's lack of training,

11   supervision, or retention was the moving force behind or substantially contributed to

12   Chrisman's actions.  <u>See</u> <u>AE ex rel. Hernandez</u>, 666 F.3d at 636.  They merely state that it

13   was.

14        Finally, plaintiffs request punitive damages, which are not available against a City

15   under § 1983.  <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271, 101 S. Ct. 2748,

16   2762 (1981).  Accordingly, plaintiffs have failed to state a § 1983 claim against the City.

17        Our Rule 16 scheduling order set a February 13, 2012 deadline for motions to amend

18   the complaint (doc. 13).  The deadline expired long ago.  Moreover, plaintiffs have already

19   amended their complaint once.  Accordingly, we grant the City's motion to dismiss without

20   granting leave to amend.

21                                         **III**

22        The City argues that it is immune from the state law claims.  Under A.R.S. § 12-

23   820.05(B), "[a] public entity is not liable for losses that arise out of and are directly

24   attributable to an act or omission determined by a court to be a criminal felony by a public

25   employee unless the public entity knew of the public employee's propensity for that action."

26   Plaintiffs do not dispute that Chrisman's actions constitute a felony.  Instead, they argue that

27   there must be a criminal conviction before the City can be immunized under A.R.S. § 12-

28   820.05 for Chrisman's conduct.

1    Although Arizona courts have not yet held in a published decision that a criminal
2    conviction is not a prerequisite for a finding of immunity under A.R.S. § 12-820.05, this
3    District has consistently concluded that a criminal conviction is not required.  See, e.g.,
4    McGrath v. Scott, 250 F. Supp. 2d 1218, 1234 (D. Ariz. 2003); Cameron v. Gila Cnty., CV-
5    11-80-PHX-JAT, 2011 WL 2115657, at *4 (D. Ariz. May 26, 2011);  Al–Asadi v. City of
6    Phoenix, CV-09-47-PHX-DGC, 2010 WL 3419728, at *5 (D. Ariz. Aug. 27, 2010); see also
7    Rand v. City of Glendale, 1-CA-CV-07-0722, 2008 WL 5383363, at *6 (Ct. App. Dec. 26,
8    2008) (unpublished decision) (felony conviction is not a prerequisite to application of A.R.S.
9    § 12-820.05).

10    McGrath, recognizing the absence of an Arizona decision directly on point, relied on
11    State v. Heinze, 196 Ariz. 126, 993 P.2d 1090 (Ct. App. 1999) to analyze A.R.S. § 12-
12    820.05(B).  McGrath, 250 F. Supp. 2d at  1234.  Heinze analyzed a provision that excuses
13    a state's need to indemnify against "[l]osses. . . that arise out of and are directly attributable
14    to an act or omission determined by a court to be a felony. . .unless the state knew of the
15    person's propensity for that action." A.R.S. § 41-621(L)(1).  Heinze concluded that under a
16    plain reading of A.R.S. § 41-621(L)(1), any court could determine whether an act constitutes
17    a felony.  In doing so, it rejected the argument that a felony conviction was a prerequisite to
18    the provision's application.  Heinze, 196 Ariz. at 130, 993 P.2d at 1094.  After noting the
19    similar language in A.R.S. § 41-621(L)(1) and A.R.S. § 12-820.05(B), McGrath concluded
20    that a felony conviction was not a prerequisite to immunity under A.R.S. § 12-820.05(B).
21    McGrath, 250 F. Supp. 2d at 1234.

22    Plaintiffs argue that McGrath was wrongly decided.  They point out that the statutory
23    language in A.R.S. § 12-820.05(B) is not identical to A.R.S. § 41-621(L)(1), because A.R.S.
24    § 12-820.05(B) refers to acts "determined by a court to be a criminal felony," while A.R.S.
25    § 41-621(L)(1) refers to acts "determined by a court to be a felony."  According to plaintiffs,
26    the addition of the word "criminal" can only mean that a criminal court must determine
27    whether an act is a felony.  But the word "criminal" modifies "felony," not "court."  We agree
28    with McGrath and other cases in this District recognizing that A.R.S. § 12-820.05(B)'s

1   language permits any court to determine whether an act is a felony, and thus does not require
2   a criminal conviction as a prerequisite.  Moreover, we do not find that certification of this
3   question to the Arizona Supreme Court, as plaintiffs suggest, is warranted.

4           Plaintiffs next argue that because immunity applies to "losses that arise out of and are
5   directly attributable to an act. . . by a public employee," A.R.S. § 12-820.05, immunity is
6   only available for vicarious liability claims.  Because plaintiffs also allege that the City is
7   directly liable under counts five and six for negligent training and supervision, they conclude
8   that the City's motion must be denied.  Plaintiffs rely on Heinze's conclusion that the
9   immunity available in § 41-621(L)(1) applies only to vicarious liability claims.  Heinze, 196
10  Ariz. at 128, 993 P.2d at 1092.  The purpose of the statute analyzed in Heinze, however, is
11  different.  That statute addressed limitations on a state's need to indemnify its employees for
12  their personal liability.

13          By contrast, A.R.S. § 12-820.05 immunizes an entity from liability, not just
14  indemnification.  It states that "[a] public entity is not liable for losses that arise out of and
15  are directly attributable to" a felony act by a public employee.  A.R.S. § 12-820.05.
16  Importantly, the statute grants immunity from liability for losses attributable to the felony act.
17  Here, plaintiffs allege that they lost their son after Chrisman feloniously shot and killed him.
18  It is this loss from which the City is immunized.  Whether the City is directly or merely
19  vicariously liable, the loss is the same, and the City is immune unless it knew of Chrisman's
20  propensity to commit the act.

21          Plaintiffs have not pointed to a single case where a court restricted the application of
22  A.R.S. § 12-820.05 to vicarious liability claims.  To the contrary, this District has found a
23  public entity immune under A.R.S. § 12-820.05 and dismissed all state law claims against
24  it, including claims for negligent training and supervision.  See Doe v. Dickenson, 615 F.
25  Supp. 2d 1002, 1015 n.8 (D. Ariz. 2009) (because city entitled to immunity under A.R.S. §
26  12-820.05, court did not need to reach insufficiency of evidence arguments on negligent
27  training and supervision claims before granting summary judgment on all state law claims).
28  If A.R.S. § 12-820.05 applies, the City will not be liable for any losses "aris[ing] out of and

1   [] directly attributable to" Chrisman's felony acts.  A.R.S. § 12-820.05.

2         Plaintiffs argue that the City is not immune from liability because it knew that
3   Chrisman planted drug paraphernalia on a woman, was on the Brady List, and participated
4   in a scam, and therefore knew of Chrisman's propensity to act illegally, "taunt[] and
5   endanger[] vulnerable and minority citizens," and "flagrantly disregard[] the law." <u>Response</u>
6   <u>to Mot. for J. on Pleadings</u> at 8.  The propensity exception is narrow.  <u>Dickenson</u>, 615 F.
7   Supp. 2d at 1015.  Courts look to the public entity's "actual knowledge that its employee
8   committed an act or acts in the past that were similar to the harm suffered by the plaintiff"
9   when deciding whether the exception applies.  <u>Id.</u> at 1016.  Thus, in <u>McGrath</u>, the plaintiff's
10  allegations that a complaint of excessive force was lodged against a police officer, and that
11  the officer committed multiple acts of misconduct in his prior jobs were sufficient to show
12  that the police department knew of the officer's propensity to commit assault.  250 F. Supp.
13  2d at 1235.  In <u>McGrath</u>, the harm suffered by the plaintiff (an unprovoked assault) was
14  similar to the acts the officer committed in the past.

15        Here, however, the connection between Chrisman's past and his conduct on October
16  5, 2010 is much more attenuated.  The harm caused by planting drug paraphernalia on a
17  mentally ill woman and participating in a financial scam, however offensive, is not similar
18  to the harm caused by taking a life.  And lacking integrity alone is not sufficiently connected
19  to killing without reason.  Plaintiffs do not allege that the City knew of a history of violence,
20  or of Chrisman's involvement in any other unjustified shootings.  Chrisman does not have
21  to have committed murder in the past for the City to know of his propensity to commit the
22  unjustified killing described by plaintiff.  However, planting evidence, lacking integrity, and
23  participating in an off-duty scam is not enough to show that the City knew Chrisman had the
24  propensity to attack with pepper spray, tase, and shoot and kill an unarmed citizen in his
25  home without provocation.

26        Because plaintiffs do not dispute that Chrisman's actions constitute a felony, and
27  because they have not alleged facts showing that the City knew of Chrisman's propensity to
28  commit those acts, the City is not liable under A.R.S. § 12-820.05(B).  Accordingly, the City

1  is entitled to judgment on the pleadings on the state law claims.

2                                               **IV**

3          **IT IS ORDERED GRANTING** the City of Phoenix's motion to dismiss plaintiffs'

4  § 1983 claims (doc. 31).  Count four is dismissed.

5          **IT IS ORDERED GRANTING** the City of Phoenix's motion for judgment on the

6  pleadings on state law claims (doc. 32).  Counts five and six are dismissed against the City

7  of Phoenix.

8          DATED this 20th day of June, 2012.

9

10                          _Frederick J. Martone_

11                                Frederick J. Martone
                                 United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28